

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**ENTERED**
**01/23/2008**

| | | |
|---|---|---|
| IN RE: | § | |
| SEAQUEST DIVING, LP, *et al* | § | CASE NO: 07-32068 |
| Debtor(s) | § | |
| | § | CHAPTER 11 |
| | § | |
| SEAQUEST DIVING LP, *et al* | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 07-3310 |
| | § | |
| S&J DIVING INC, *et al* | § | |
| Defendant(s) | § | |

### MEMORANDUM OPINION AND CONCLUSIONS OF LAW
### CONCERNING ORDER GRANTING SUMMARY JUDGMENT
### (Doc. # 30)

Debtors and certain of their creditors (collectively, the "Plaintiffs") filed this adversary proceeding to subordinate claims asserted by S&J Diving, Inc. ("S&J") and its sole shareholder, Stanley Earle Jones ("Jones," collectively, the "Defendants"). Plaintiffs allege that Defendants' claims against the bankruptcy estate arise out of the rescission of an equity security interest and therefore must be subordinated to other unsecured claims under authority of Bankruptcy Code § 510(b). After review of the pleadings, affidavits and other material submitted in support of (and in opposition to) summary judgment, and after oral argument the Court grants summary judgment by separate judgment issued this date.

### I.     UNDISPUTED FACTS

The Court can find no dispute about the facts. At oral argument the Court asked counsel for Defendants whether there were facts in dispute and counsel identified none.

A.    Procedural Background

Seaquest Diving, LP ("Diving") and Seaquest General Holdings, LLC ("Holdings," collectively the "Debtors") filed their petitions commencing bankruptcy cases under Chapter 11 of the Bankruptcy Code on March 29, 2007 (the "Petition Date"). Case Nos. 07-32068; 07-32070. On June 28, 2007, the Debtors and two of their creditors, Emmons & Jackson, PC ("E&J"), and Ryan Marine Services ("Ryan"), filed this adversary proceeding.

B.  Background of the Claim Asserted by Defendants Against the Estates in These Bankruptcy Cases

    1. The Genesis of the Relationship

On June 1, 2006, Debtors and Defendants entered into a number of related agreements by virtue of which Debtors acquired S&J's business and assets and Defendants acquired equity interests in Debtors.[1]

    2. The First State Court Lawsuit and the Handwritten Settlement

A dispute arose, and on September 1, 2006, Debtors filed the First State Court Lawsuit against Defendants.[2] On August 2, 2006, Debtors and Defendants entered into their first Rule 11 Agreement (the "Handwritten Agreement").[3]

    3. The Second State Court Lawsuit and the Oral Agreement (Settlement)

The Handwritten Agreement did not resolve the problems between Debtors and Defendants. On September 28, 2006, Debtors initiated the Second State Court Lawsuit.[4] On October 3, 2006, the Parties announced a settlement on the record (the "Oral Agreement").[5] The first item announced by the parties was:

> Mr. Jones, Stanley Jones as (sic) S&J Diving, will no longer be partners—partner of Seaquest Diving LP or its general partner.[6]

The second item announced by the parties was revocation of the agreement for Debtors to acquire S&J's business and assets:

> [T]he asset contribution and transaction (sic) agreement will be rescinded such that Seaquest and S&J Diving will retain all of its (sic) assets in lieu of that.[7]

The third element of the settlement was:

---

[1] Exhibits 1, 2 and 3 to the LeBouef Affidavit, Doc. ## 31-2 (Asset Contribution and Transition Agreement), 31-3 (Company Agreement of Seaquest General Holdings, LLC), 31-4 (Seaquest Diving LP Agreement of Limited Partnership).

[2] Cause No. 2006-47569 in the 281st Judicial District Court of Harris County Texas styled, SeaQuest Diving, LP v. S&J Diving, Inc.

[3] Exhibit 4 to the LeBouef Affidavit, Doc. # 31-5 (Rule 11 Agreement). "Rule 11" refers to Texas Civil Procedure Rule 11 which governs agreements resolving lawsuits.

[4] *SeaQuest Diving, LP v. S & J Diving, Inc.*, Cause No. 2006-61175 in the 189th Judicial District Court of Harris County, Texas.

[5] Exhibit 7 to the LeBouef Affidavit, Doc. # 31-8 (Transcript of hearing held on October 3, 2006. Hereafter "Transcript").

[6] Transcript, page 2, line 25 through page 3, line 2.

[7] Transcript, page 3 lines 3 through 6.

> The parties will then enter into an asset sales agreement whereby S&J Diving will convey assets to Seaquest, general hold –sorry – general holdings to Seaquest Diving LP. The purchase price for those assets will be $3.1 million. In addition, Seaquest will reimburse S&J for expenditures made to date of $2.3 million. And Seaquest will pay to S&J an amount that is the equivalent of what would have been called priority return under the partnership agreement had S&J not <u>rescinded</u> its partnership interest in that entity.[8]

There were other provisions for disentangling the businesses, such as non-compete agreements, provisions for obtaining separate offices and business facilities, and various transition issues related to the businesses. The parties agreed to cooperate to get the transaction closed, and agreed that if there were any disputes, those disputes would be submitted to the state court judge who would be the sole and final arbiter, effectively waiving jury trial and appeal.

    4.       The Final Judgment

The Oral Agreement did not end the dispute. On January 5, 2006, Defendants filed a Counterclaim in the Second State Court Lawsuit to enforce the Oral Agreement.[9]

Defendants vigorously argue that the Counterclaim did not seek rescission of a purchase of securities. Defendants argue that the allegations and the prayer sought only enforcement of the purchase agreement (the third element of the settlement as it is stated in this memorandum above). This argument is not persuasive. First, the authority to file the counterclaim was derived from the provision of the settlement in which the parties agreed to submit to the state court any disputes regarding consummation of the settlement. And the settlement was clearly a rescission of the transaction in which Defendants obtained an equity interest (a security) interest in Debtors. Therefore, the essence of the counterclaim was clearly a demand for payment of the consideration for that rescission. Second, notwithstanding the fact that Defendants had not prayed for a judgment declaring the rescission of the partnership and LLC investment, the judge awarded that relief in the Final Judgment, as discussed below.

The state court issued a final judgment on March 23, 2007 (the "Final Judgment").[10] The Final Judgment adjudicates that Defendants were equity owners of Debtors until the October 3 Oral Agreement:

> The Court finds that S&J Diving, Inc. and Stanley Earle Jones are not and have not been members or partners of SeaQuest Diving, LP and SeaQuest General Holdings, LLC, <u>starting as of October 3, 2006.</u>[11]

---

[8] Transcript page 3 lines 13 through 23 (emphasis added).
[9] Defendant's Ex. A-3, Doc. # 35-2 (Defendant's Counterclaim).
[10] Exhibits 9 to the LeBouef Affidavit, Doc. # 31-10 (hereinafter "Final Judgment").
[11] Final Judgment, at page 5, paragraph H (emphasis added).

The Final Judgment awarded "actual damages in the sum of $2,604,000.00"[12] and "determined reasonable and necessary attorney fees in the amount of $128,014.88."[13] The Final Judgment further decreed that all the assets of S&J and Jones ever in possession of SeaQuest were to be returned to S&J Diving and Jones. SeaQuest was also ordered to assign to S&J certain service agreements.

## II.   JURISDICTION

This Court has jurisdiction over this matter, which is a core proceeding, pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (B), and (O).

## III.   STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is warranted if a party establishes that there is no genuine dispute about any material fact and that the law entitles it to judgment. Fed. R. Civ. P. 56(c). Rule 56(c) mandates "the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 106 S.Ct. 2548, 2552 (1986). Fed. R. Civ. P. 56(c) is incorporated into the Federal Rules of Bankruptcy Procedure by rule 7056.

All justifiable inferences will be drawn in the nonmovant's favor, *see Anderson v. Liberty Lobby, Inc.*, 106 S.C.t 2505, 2513 (1986), but conclusory affidavits will not suffice to create or negate a genuine issue of fact. *See Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); *Shaffer v. Williams*, 794 F.2d 1030, 1033 (5th Cir. 1986). Unless there is sufficient evidence to return a verdict in the nonmovant's favor, there is no genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. at 2511. Admissibility of evidence on a motion for summary judgment is subject to the standards and rules that govern evidence at trial. *See Rushing v. Kansas City Southern Railway Co.*, 185 F.3d 496 (5th Cir. 1999), *cert. denied*, 120 S.Ct. 1171 (2000).

Rule 56 of the Federal Rules of Civil Procedure provides:

> (c) ... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
>
> (e) ... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for the trial.

---

[12] Final Judgment, at page 2, paragraph A.
[13] Final Judgment, at page 5, paragraph G.

As noted above, the parties have not identified any issue of fact for trial.

### IV.    CONCLUSIONS OF LAW

A.    Chapter 5, Subchapter I of the Bankruptcy Code

A "claim" is a "right to payment." Bankruptcy Code § 101(5). A creditor may file a proof of claim in a bankruptcy case. Bankruptcy Code § 501(a). If a creditor files a claim, the claim is "allowed" unless a party in interest objects. Bankruptcy Code § 502(a).

Allowance of claims and subordination of claims are different concepts. Allowance of claims is a determination of liability *vel non* and quantum of the claim. Allowance of a claim is determined by state law.[14] But after allowance of the claim, other sections of Subchapter I of Chapter 5 of the Bankruptcy Code seek "to establish a fair allocation of estate assets among the many types of claimants having a call upon them in a liquidation or reorganization case. Subordination of a claim alters the otherwise applicable priority of that claim…" 4 Collier *Bankruptcy*, ¶ 510.01 (15th ed. rev. 2007).

B.    Mandatory Subordination of a Claim Under § 510

Subordination of claims arising from rescission (or damages related to) securities transactions is mandatory for distributions in bankruptcy cases.

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock. 11 U.S.C. § 510(b).

C.    An Interest in an Limited Partnership or a Limited Liability Company in a Security

The term "security" includes an interest of a limited partner in a limited partnership. 11 U.S.C. § 101(49).

D.    Does Defendants' Claim "arise from rescission of a purchase or sale of a security of the debtor", or is Defendants' Claim a claim "for damages arising from the purchase or sale of such a security?"

"Arising from" is understood to require some nexus or causal link between the claim and the purchase or sale of a security. See, *Allen v. Geneva Steel Co. (In re Geneva Steel Co.*, 281

---

[14] *Matter of Ford*, 967 F.2d 1047, 1050 (5th Cir. 1992). However, the bankruptcy court may reconsider an otherwise allowable claim and may disallow it "according to the equities of the case." Bankruptcy Code § 501(j).

F.3d 1173 (10th Cir. 2002); *Rombro v. Dufrayne (In re Med Diversified, Inc.)*, 461 F.3d 251 (2d Cir. 2006); *Baroda Hill Inv., Inc. v. Telegroup, Inc. (In re Telegroup, Inc.)*, 281 F.3d 133 (3d Cir. 2002). There is no dispute that Defendants' claim is the right to payment that was adjudicated in the Final Judgment.

The Final Judgment enforced the Oral Agreement. It did so by declaring that the Oral Agreement terminated Defendants' equity interests in Debtors and by requiring Debtors to perform their obligations which were part of that agreement to rescind Defendants' investment in Debtors' securities, *i.e.* it required Debtors to pay the consideration for the rescission or to pay the damages arising out of the rescission. There is clearly a nexus between the rescission of Defendants' equity interests in Debtors and the right to payment of money (Defendants' "claim") which is adjudicated in the Final Judgment.

S&J and Jones argue that the Court is not allowed to look behind the Final Judgment to determine whether a causal link exists between the award of damages and the sale of the security. S&J and Jones cite several non-authoritative cases that suggest that the causal link is severed when the "claim" is a note or a judgment.

Before the Court reviews that jurisprudence, the Court notes that Bankruptcy Code § 501(b) requires subordination of all claims "arising from" rescission and of all claims for damages "arising from" the purchase or sale of a security. Section 510(b) does not exclude such claims if they are evidenced by (or have been converted to) a note, and the statute does not exclude claims that have been reduced to judgment. The statute does not require proof of fraud or other improper motive. And the statute does not give the Court discretion. If the right to payment (the "claim") "arises from" the securities transaction, then it must be subordinated.[15]

Defendants cite *In re The Consolidated FGH Liquidating Trust*, 2007 U.S. Dist. LEXIS 73721 (S.D. Miss. 2007), for the proposition that the equitable nature of a claim is lost once it is converted to a judgment. In *FGH,* the creditor was an employee. His employment contract gave him the right to buy stock options. When the employee was fired, the company refused to allow him to exercise the options. The employee sued for breach of contract, fraud, promissory fraud, and fraud in the inducement. The district court held that the debt was not subject to subordination under § 510(b). The decision seems to rest on two bases: (i) that the creditor was never a stockholder of the company, and (ii) that the suit was converted to a debt a year before the bankruptcy filing.

> The equitable nature of the claim was not retained, in that it was converted to a debt over one year prior to the filing of the debtor's bankruptcy petition.[16]

With respect to the second basis of the decision, presumably the Court's emphasis is on the one year period, not on the fact that there was a note evidencing the "debt." Bankruptcy Code § 101(12) defines "debt" as "liability on a claim." And as discussed above, all "claims" can be subordinated if they have the required nexus to securities. The result in *FGH* seems

---

[15] Contrast § 501(c) which gives the court discretion in awarding equitable subordination.
[16] *FGH Liquidating Trust*, 2007 U.S. Dist. LEXIS 73721, at *10.

appropriate; however, because the Court apparently considered the *gravamen* of the employee's lawsuit to be a claim for breach of the employment contract, not from rescission of a securities purchase. The employee never held, nor did he sue for, a securities transaction. He sued for failure to realize the employment income that he had been promised. Therefore, this Court concludes that *FGH* does not stand for the proposition that issuance of notes for a securities claim precludes subordination under § 510(b).

A pre-Bankruptcy Code case decided by the Fifth Circuit supports this Court's analysis. *Robinson v. Wangemann*, 75 F.2d 756, 758 (5th Cir. 1935) held that a promissory note received in the redemption of stock must be subordinated to claims of unsecured creditors. In that case, not only had the debt for redemption of shares been memorialized by a note, the note had been paid down in part and renewed, and new notes issued. The Fifth Circuit clearly held that the claim was subordinated because it arose from a securities transaction. There was no indication of fraud in *Robinson* or any attempt by an equity interest owner to better his position *vis a vis* general unsecured creditors. Although *Robinson* was decided prior to the enactment of § 501(b), the statute was intended to codify the existing jurisprudence.[17] The Fifth Circuit recently cited *Robinson* with approval: *Carrieri v. Jobs.com Inc.*, 393 F.3d 508, n.1 (5th Cir. 2004).

In *Montgomery Ward Holding Corp. v. Schoeberl* 272 B.R. 836 (Bankr. D. Del. 2001), Judge Walsh concluded that § 510(b) does not apply unless there is fraud or other misconduct involved in the transaction (such as an attempt by a stockholder to improve his position *vis a vis* general unsecured creditors). The case further holds that once a person substitutes a debt relationship for an equity relationship (*i.e.* taking a note as payment for an equity interest) <u>without</u> fraud or misconduct, §510(b) does not apply to the note. In *Montgomery Ward* the debtor redeemed stock from a former employee pursuant to a stockholder's agreement that had been in effect for almost a decade. The debtor gave the employee a note for the redemption price. The Court held that § 510(b) did not apply because a note given for redemption of stock was not in the nature of "damages" for improper conduct.

> Montgomery Ward alleges the Note represents a debt based on the redemption of its common stock. It argues that any claim for damages under the Note therefore 'arises from' the purchase or sale of its securities within the meaning of § 510(b)…The plain language of § 510(b) is more limited. It applies only to a claim that directly concerns the stock transaction itself, *i.e.* the actual purchase and sale of the debtor's security must give rise to the contested claim.[18]

The Court concludes that *Montgomery Ward* is not persuasive of a decision in the fact pattern decided by this memorandum. First, § 510(b) does not have any language requiring fraud

---

[17] "Under the former Bankruptcy Act, the issue was whether [securities related] claims should be treated on a parity with the claims of the general, unsecured creditors or whether such claims should be subordinated. Though the case law was unsettled under the Act, some decisions permitted a rescinding security holder of the debtor to share on parity with the general creditors. Section 510(b), however, requires subordination of such claims to all claims or interests that are senior or equal to the claim or interest represented by the security." 4 Collier *Bankruptcy*, ¶ 510.04 (15th ed. rev. 2007).

[18] 272 B.R., at 842.

or misconduct. The Court agrees that the tenor of § 510(b) implies that it requires something more than a simple repurchase of stock. Section 510(b) applies to "rescission" and to "damages" from securities violations (and to reimbursement claims related to these). "Rescission" is different from "redemption".

> **Rescission** is a party's unilateral unmaking of a contract for a legally sufficient reason, such as the other party's material breach. Rescission is generally available as a remedy or defense for a nondefaulting party and restores the parties to their precontractual positions. An agreement by contracting parties to discharge all remaining duties of performance and terminate the contract."[19]

> "**Redemption** is the act or an instance of reclaiming or regaining possession by paying a specific price…The reacquisition of a security by the issuer."[20]

*Montgomery Ward* did not deal with either rescission or damages. It dealt with payment for the purchase price for redemption. Therefore, the Court agrees with the result in *Montgomery Ward*, but not with the application of the reasoning in that case to this one. *Mobile Tool International*, 306 B.R. 778 (Bankr. Del. 2004) applies the *Montgomery Ward* logic concerning conversion of stock to debt and holds that once a note is substituted for a stock interest, § 510(b) does not apply. Like *Montgomery Ward, Mobile Tool* dealt with redemption, not rescission. Again, the Court agrees with the result, but not with the language of the case.

It is clear that the initial transaction between Debtors and Defendants was the formation of new business entities, the acquisition of securities (LLC and LP interests) by Defendants, and it is clear that the Final Judgment was the rescission of those acquisitions after 3 starts at litigation. It was not a redemption as the other cases here presented. Defendants' claims in this case arise directly from their initial acquisition of stock and disputes about performance under the contracts under which those securities were acquired.

Defendants also argue that their claim cannot be subordinated because it is based on a state court judgment. This argument has three prongs. First, Defendants argue that they are asserting a judgment, not an equitable right of rescission. Second, Defendants argue that the Court cannot look beyond the judgment to the source of the obligation, but must take the judgment at its face as requiring an asset purchase or as damages based on an unspecified legal cause of action. Third, Defendants argue that a judgment is a debt, not a securities claim.

The first argument is not persuasive. The Court agrees that the Final Judgment establishes a right to payment. The Court agrees that the Debtors' liability and that the amount of the liability have been adjudicated and are not subject to further review. But a right to payment is a claim. What is at issue here is not the allowance of that claim, but the priority of that claim in the distribution of assets in a bankruptcy case. That is a federal issue governed by Chapter 5, Subchapter I of the Bankruptcy Code. The issue of priority of payment in a

---

[19] Black's Law Dictionary 1308 (7th ed. 1999).
[20] Black's Law Dictionary 1282 (7th ed. 1999).

bankruptcy case did not arise until March 29, 2007, when the bankruptcy petitions were filed. This was over a month after the Final Judgment was rendered. The Final Judgment could not have adjudicated subordination (priority of payment) of this claim in this bankruptcy case because that legal cause of action did not exist when the Final Judgment was rendered. In addition the allowance of claims, priority of claims, and distribution of assets in a bankruptcy case is within the exclusive jurisdiction of the bankruptcy court. 28 U.S.C. § 157(b)(2)(A), (B), (O), § 1334(e)(1). Therefore the state court could not have adjudicated that issue.

Defendants were not able, at oral argument, to articulate any cause of action for the award of damages in the Final Judgment other than Debtor's default on its obligations under the Oral Agreement. The Oral Agreement and the Final Judgment implementing it clearly effect the rescission of Defendants acquisition of Debtors' securities. And the Final Judgment, in paragraph H, is itself declaratory that it is effecting the rescission of the acquisition of security interests in Debtors.

The Final Judgment is a right to payment. Therefore it is a claim under Bankruptcy Code § 101(5), and claims not only can, but must be subordinated if they meet the requirements of § 510.

Two recent cases address the "judgment" issue: *In re American Wagering, Inc.*, 493 F.3d 1067 (9th Cir. 2007); and *In re Alta+Cast*, 301 B.R. 150 (Bankr. D. Del. 2003).

*Wagering* holds that the holder of a judgment is not subject to subordination under § 510(b) where the judgment was based on a contract for compensation, the compensation was valued on the share price but did not provide for compensation in the form of shares, and the holder of the judgment never attempted to recover stock nor became a shareholder. Like *FGH Liquidating Trust*, *American Wagering* is distinguishable because the creditor was never a shareholder and because the decision can be understood as enforcing the employment agreement, not rescission of a securities acquisition or damages for a securities transaction.

*Alta+Cast* holds that the holder of a prepetition judgment against the debtor was subject to subordination under § 510(b) because the dispute involved an agreement by which the debtor agreed to repurchase the stock from the claimant if he was terminated for cause. The *Alta+Cast* court held that the judgment arose from an agreement for the sale or purchase of a security because the claimant retained the risk of ownership by holding the stock until his termination. The claim had a causal connection to the debtor's repurchase requirement because the claim arose from the failure to repurchase the interest.

The Court concludes:

1. That Defendants' claim is a right to payment adjudicated by the Final Judgment;
2. That the Final Judgment is an adjudication of rescission of the partnership and LLC agreements and related obligations to merge businesses and acquire securities;
3. That because the Final Judgment and the claim it adjudicates arose from the rescission of these securities transactions, § 510(b) applies;

4. That because § 510(b) applies the claim must be subordinated.

## V. CONCLUSION

There being no issue of fact raised, summary judgment is appropriate and is granted by separate order issued this date.

SIGNED 01/23/2008.

_Wesley W. Steen_
Wesley W. Steen
United States Bankruptcy Judge